UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>Defendant. | Case No. 21-cv-10719 |

## COMPLAINT

### INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to enforce a request for records about federal involvement in state and local law enforcement agencies' purchase and use of cell site simulator technology, including whether the Federal Bureau of Investigation ("FBI") is continuing to interfere with state and local agencies' duties of candor and transparency to courts and the public surrounding their purchase and use of this technology. In response to Plaintiff's FOIA request, the FBI has taken the extraordinary step of categorically refusing to confirm or deny the existence of responsive records, in violation of its clear obligations under FOIA.

2. Cell site simulators, also known as "Stingrays" or "IMSI catchers," impersonate a wireless service provider's cell tower, prompting cell phones and other wireless devices in the area to communicate with them. They can be used to locate, track, and identify people's phones, even in constitutionally protected places traditionally immune from warrantless searches, such as a home. When used to locate a particular suspect's phone, cell site simulators collect unique

numeric identifiers associated with all the phones in a given area, ensnaring bystanders' phones in the search. Cell site simulators can also interfere with nearby cell phones' connection to the cellular network.

3. Defendant Federal Bureau of Investigation has previously required state and local law enforcement agencies to sign nondisclosure agreements ("NDAs") with the FBI before purchasing cell site simulators from private vendors, including L3Harris Technologies ("Harris") (formerly known as the Harris Corporation), which was for a number of years a major provider of cell site simulators to state and local law enforcement agencies. Those NDAs were sweeping in their terms, prohibiting not just release to the public of even basic information about purchase and use of cell site simulators, but also precluding disclosure of such information in court submissions (including warrant applications) and judicial hearings. As one court put it, "such an extensive prohibition on disclosure of information to the court . . . prevents the court from exercising its fundamental duties under the Constitution." *State v. Andrews*, 134 A.3d 324, 338 (Md. Ct. Spec. App. 2016); *see also United States v. Patrick*, 842 F.3d 540, 546 (7th Cir. 2016) (Wood, C.J., dissenting) ("[I]n this case, the government appears to have purposefully concealed the Stingray's use from the issuing magistrate, the district court, defense counsel, and even this court.").

4. In response to sustained criticism of these NDAs by courts, lawmakers, civil liberties advocates, defense attorneys, and others, the FBI has claimed that it scaled back or ceased imposing the NDAs as a condition of state and local agencies purchasing cell site simulators from Harris. However, Harris no longer markets cell site simulators to state and local law enforcement agencies, so many agencies have turned to other companies for newer versions of the technology. Despite the continued purchase and use of cell site simulators by state and local

law enforcement agencies, the public lacks information about whether the FBI continues to impose conditions on such sales, including whether the FBI requires state and local law enforcement agencies to sign nondisclosure agreements before purchasing the equipment.

5. Eleven months ago, Plaintiff American Civil Liberties Union ("ACLU") submitted a FOIA request ("the Request") to the FBI seeking any records created since 2018 pertaining to conditions the FBI imposes on state and local law enforcement agencies seeking to acquire or use cell cite simulator technology, including any nondisclosure agreements. In response, the FBI refused to confirm or deny the existence of any responsive records. Such refusal to confirm or deny the existence of records is generally known as a "Glomar response." To date, the FBI has not conducted a search for records nor provided any responsive records.

6. The FBI's use of a Glomar response to keep secret whether it even has records regarding the secrecy requirements at issue is ironic indeed. It also violates FOIA's clear command that agencies search for and produce responsive records. The information sought is of considerable public significance, not only to enforce the public's right to know about the federal government's involvement in invasive surveillance by state and local law enforcement, but also to assess whether the federal government's actions comply with constitutional and legal limitations and are subject to appropriate oversight and control.

7. The ACLU now asks the Court to issue an injunction requiring the FBI to conduct an adequate search for records and produce responsive records. The ACLU also seeks an order enjoining the FBI from assessing fees for the processing of the Request.

JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9. Venue lies in the Southern District of New York pursuant to 5 U.S.C. § 552(a)(4)(B), including because it is the district in which the Plaintiff has its principal place of business.

## PARTIES

10. The American Civil Liberties Union is a nationwide, non-profit, nonpartisan organization with its principal place of business in New York, New York. Its mission is to maintain and advance civil rights and civil liberties and to ensure that the U.S. government acts in compliance with the Constitution and laws of the United States. The ACLU is committed to transparency and accountability in government and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and the public (in both its raw and analyzed form) are critical and substantial components of its work.

11. Defendant FBI is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTS

### Background

12. For years, law enforcement agencies' use of cell site simulators was kept secret. That secrecy was largely a result of the FBI requiring state and local law enforcement agencies to sign sweeping nondisclosure agreements before they could purchase cell site simulators from a private supplier, thereby denying members of the public, judges, attorneys, and lawmakers basic information about surveillance practices that implicate serious questions under the Constitution.[1]

---

[1] *See, e.g.*, Dell Cameron & Dhruv Mehrotra, *Cops Turn to Canadian Phone-Tracking Firm After Infamous 'Stingrays' Become 'Obsolete'*, Gizmodo (Oct. 23, 2020), https://gizmodo.com/american-cops-turns-to-canadian-phone-tracking-firm-aft-1845442778; Nathan Freed Wessler, *Documents in ACLU Case Reveal More Detail on FBI Attempt to Cover Up Stingray Technology* (Sept. 24, 2014), https://www.aclu.org/blog/documents-aclu-case-reveal-more-detail-fbi-attempt-cover-stingray-technology; Shawn Musgrave, *Before They Could*

Many such nondisclosure agreements have now been released in response to public records requests,[2] and the FBI has publicly acknowledged its use of the nondisclosure agreements and responded to criticism about the excessive secrecy to which the agreements led.[3]

13.  The FBI nondisclosure agreements that are now in the public domain relate to state and local law enforcement agencies' purchase of cell site simulator equipment from Harris. Last year, however, Harris announced that it would no longer provide cell site simulators (or hardware and software upgrades) to local law enforcement agencies. Many agencies have since purchased cell site simulators from other suppliers. Other companies that market cell site simulators in the United States include Tactical Support Equipment, Inc ("TSE"), a North Carolina-based distributor of cell site simulators manufactured by the Canadian firm Octasic, Inc., and Digital Receiver Technology, Inc. ("DRT"), a Maryland-based subsidiary of The Boeing Company. The public lacks information about whether the FBI is currently imposing conditions on state and local agencies' purchase of cell site simulator technology from these or other companies.

---

*Track Cell Phone Data, Police Had to Sign a NDA with the FBI* (Sept. 22, 2014), https://www.muckrock.com/news/archives/2014/sep/22/they-could-track-cell-phone-data-police-had-sign-n.

[2] Mike Katz-Lacabe, *Non-Disclosure Agreements Between FBI and Local Law Enforcement for StingRay*, Ctr. for Hum. Rts. & Priv., https://www.cehrp.org/non-disclosure-agreements-between-fbi-and-local-law-enforcement (last visited Dec. 14, 2021).

[3] *See, e.g.,* Sworn Statement of FBI Tracking Technology Unit Chief Bradley S. Morrison (Apr. 11, 2014), https://www.sandiego.gov/sites/default/files/legacy/cityattorney/pdf/news/2014/nr141222c.pdf; Ellen Nakashima, *FBI Clarifies Rules on Secretive Cellphone-Tracking Devices*, Wash. Post (May 14, 2015), https://www.washingtonpost.com/world/national-security/fbi-clarifies-rules-on-secretive-cellphone-tracking-devices/2015/05/14/655b4696-f914-11e4-a13c-193b1241d51a_story.html.

The ACLU's FOIA Request and Defendant's Response

14. On January 8, 2021, the ACLU submitted the Request to the FBI to determine whether the FBI is still placing requirements on state and local law enforcement agencies that purchase or use cell site simulators. The Request is attached as Exhibit A.

15. The ACLU sought two categories of records, described with specificity in the Request: (1) "Any nondisclosure agreement provided to or entered into with any state or local law enforcement agency pertaining to that agency's purchase, use, or possession of cell site simulator technology"; and (2) "All records and communications regarding conditions that state and local law enforcement agencies must meet before those agencies purchase, use, or possess cell site simulator technology, including any requirement to advance coordinate with or obtain approval from the FBI." The request sought all such records created since January 1, 2018. In order to provide additional guidance to the FBI's FOIA office, the Request further noted that the first category of records "includes (but is not limited to) nondisclosure agreements pertaining to cell site simulator technology that: (a) state or local law enforcement agencies seek to purchase from Tactical Support Equipment, Inc.; (b) was produced by Octasic, Inc.; or (c) is part of the 'Nyxcell' line of products."

16. The ACLU sought a waiver of search, review, and duplication fees on the ground that disclosure of the requested records is "in the public interest" and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The ACLU also sought a limitation of fees on the ground that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

17. By letter dated April 2, 2021, the FBI acknowledged receipt of the Request, stated that the ACLU's request for a public interest fee waiver was "under consideration," and determined that "[a]s a[] . . . representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II)." Exhibit B.

18. By letter dated June 10, 2021, the FBI stated, "pursuant to FOIA exemption (b) (7) (E) [5 U.S.C. §552 (b)(7)(E)], the FBI neither confirms nor denies the existence of records as detailed in your request." Exhibit C (brackets in original). The letter offered no detail to justify this response and did not explain how the fact of existence or nonexistence of responsive records falls within Exemption 7(E).

19. Nondisclosure agreements regarding the purchase and use of cell site simulators are not, themselves, "techniques and procedures for law enforcement investigations or prosecutions," nor would they facilitate "circumvention of the law." *See* 5 U.S.C. § 552(b)(7)(E). Additionally, the FBI has previously officially acknowledged its use of nondisclosure agreements to constrain state and local law enforcement agencies' disclosure of information about purchase and use of cell site simulators.

20. By letter dated August 23, 2021, the ACLU administratively appealed the FBI's refusal to confirm or deny the existence of any responsive records. The appeal is attached as Exhibit D.

21. By letter dated August 24, 2021, the FBI acknowledged receipt of the ACLU's administrative appeal. The acknowledgment is attached as Exhibit E.

22. To date, the ACLU has received no further response to its administrative appeal, and has received no responsive records.

## CAUSES OF ACTION

23. Defendant's failure to make a reasonable effort to search for records sought by the Request violates the FOIA, 5 U.S.C. § 552(a)(3), and Defendant's corresponding regulations.

24. Defendant's failure to timely respond to the Request and administrative appeal violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and Defendant's corresponding regulations.

25. Defendant's failure to make promptly available the records sought by the Request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendant's corresponding regulations.

26. Defendant's failure to grant Plaintiffs' request for a waiver of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendant's corresponding regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to GRANT the following relief:

1. Order Defendant to conduct a thorough search for all responsive records;

2. Order Defendant to immediately process and release all records responsive to the Request;

3. Enjoin Defendant from charging Plaintiff search, review, processing, and duplication fees in connection with responding to the Request;

4. Award Plaintiff costs and reasonable attorneys' fees in this action; and

5. Grant such other relief as the Court may deem just and proper.

December 15, 2021

Respectfully submitted,

*/s/ Nathan Freed Wessler*
Nathan Freed Wessler
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
nwessler@aclu.org

*(Counsel continues on next page)*

                                Robert Hodgson
                                New York Civil Liberties Union Foundation
                                125 Broad St., 19th Floor
                                New York, NY 10004
                                (212) 607-3300
                                rhodgson@nyclu.org[4]

---

[4] Counsel thank ACLU Speech, Privacy, and Technology Project law-graduate fellow Laura Moraff for her assistance in preparing this complaint.