# Exhibit D

August 23, 2021

Director of Office of Information Policy
United States Department of Justice
441 G Street, NW, 6th Floor
Washington, D.C. 20530

*Via FOIA STAR*

Re:     **FOIA Appeal**
        **Appeal of FBI's refusal to confirm or deny existence of responsive records in response to Request #1493352-000**

To Whom It May Concern:



AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] write to appeal the Federal Bureau of Investigation's ("FBI") refusal to confirm or deny the existence or nonexistence of records requested by Freedom of Information Act Request #1493352-000 (the "Request").

The Request, attached as Exhibit A, seeks nondisclosure agreements provided to or entered into with any state or local law enforcement agency since January 1, 2018, for the purchase, use, or possession of cell site simulator technology. The Request also seeks records and communications regarding conditions that state and local law enforcement agencies must meet before those agencies purchase, use, or possess cell site simulator technology.[2]

The FBI denied the ACLU's FOIA request in a June 10, 2021, letter (attached as Exhibit B), in which it stated that it "neither confirms nor denies the existence of records as detailed in your request" on the basis that responding to the request "would disclose the existence or non-existence of non-public law enforcement techniques, procedures, and/or guidelines" protected by Exemption (b)(7)(E).[3] The refusal to confirm or deny the existence of responsive records is commonly known as a "Glomar response."

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] *See* Ex. A at 2–3.

[3] *See* Ex. B.

1



AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

A valid justification for a Glomar response must include "reasonably detailed explanations" that demonstrate how disclosing the existence (or non-existence) of requested records would cause cognizable harm under FOIA.[4] These explanations must be both logical and plausible in light of all the evidence in the record. If they are not, the agency's Glomar response is unlawful.[5] The Response Letter offers no detail to justify the FBI's Glomar response, providing only a conclusory explanation of its basis for invoking it. It also fails to explain why acknowledging the existence or nonexistence of responsive records would reveal a generally unknown law enforcement technique, procedure, or guideline, nor how it "could reasonably be expected to risk circumvention of the law."[6] Courts have defined law enforcement "techniques" and "procedures" under Exemption 7(E) as "referring to how law enforcement officials go about investigating a crime,"[7] whereas "guideline" refers to an agency's allocation of resources for policy or conduct, whose disclosure could reasonably risk circumvention of the law through "train[ing] potential violators to evade the law or instruct[ing] them how to break the law."[8] In order for a government agency to invoke Exemption 7(E), therefore, it must demonstrate that the records themselves were compiled for law enforcement purposes; that those techniques, procedures, or guidelines are not already publicly known; and that their revelation would reasonably be expected to risk circumvention of the law. The FBI's Response fails on all counts, while also failing to demonstrate that it has distinguished between the different categories of information sought in the Request and how each warrant protection under Exemption 7(E).

The Request does not seek law enforcement techniques, procedures, or guidelines. The nondisclosure agreements and records regarding other conditions on state and local law enforcements' purchase or use of cell site simulator technology are not law enforcement techniques, procedures, or guidelines, but rather serve as preconditions that state and local law enforcement agencies must satisfy before a law enforcement technique, procedure, or guideline can even obtain. As one court has explained, NDAs covering state and local law enforcement use of cell site simulator technology are "not a recitation of the technology capabilities of the device or even the 'hows' and 'whens' or the advantages of its use for law enforcement purposes, but rather simply the need for the [law enforcement agency] to avoid

---

[4] *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 112 (2d Cir. 2014).

[5] *See Florez v. CIA*, 829 F.3d 178, 184–85 (2d Cir. 2016); *N.Y. Times Co.*, 756 F.3d at 112; *ACLU v. CIA*, 710 F.3d 422, 429 (D.C. Cir. 2013).

[6] *See* 5 U.S.C. § 552(b)(7)(E); Ex. B.

[7] *Allard K. Lowenstein Int'l Human Rts. Project v. DHS*, 626 F.3d 678, 681–82 (2d Cir. 2010). *See also Gonzalez v. USCIS*, 475 F. Supp. 3d 334, 351 (S.D.N.Y. 2020).

[8] *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) (emphasis omitted).

disclosing the existence, the technological capabilities, or any use of the device to anyone."[9]

Moreover, to the extent the FBI issued a Glomar response because the Request provided several examples of cell site simulator vendors or models that local law enforcement agencies may seek to purchase or use, the response is not justified. Confirming or denying the existence of responsive records would not reveal information about purchase or use of specific cell site simulator models, because the request seeks "[*a*]*ny* nondisclosure agreement provided to or entered into with any state or local law enforcement agency pertaining to that agency's purchase, use, or possession of cell site simulator technology,"[10] regardless of the make or model of that technology. If the FBI believes identification of specific makes or models of the technology is exempt from disclosure, it can seek to redact that information in released records.

Finally, Exemption (7)(E) protects only law enforcement techniques, procedures, and guidelines unknown to the general public, and the FBI bears the burden of establishing that its use of NDAs and other preconditions is not already known to the public.[11] And because the FBI issued a Glomar response, the proper focus of the public knowledge inquiry is the general subject of the request—that is, NDAs as well as any other preconditions set by the FBI for state and local law enforcement purchase and use of cell site simulators.[12]

It is extremely unlikely that the agency will be able to satisfy its burden of establishing that the use of NDAs and advance-coordination agreements is not already known to the public. As an initial matter, and as the Request repeatedly notes, the FBI's use of NDAs alongside other preconditions for purchase and use of cell site simulator technology have been public knowledge for years.[13] As early as 2014, the Center for Human Rights and Privacy



AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

[9] *N.Y. Civil Liberties Union v. Erie Cty. Sheriff's Office*, No. 2014/000206, 2015 WL 1295966, at *11 (N.Y. Sup. Ct., Erie Cty., Mar. 17, 2015).

[10] Ex. A at 2 (emphasis added).

[11] *Hamdan v. DOJ*, 797 F.3d 759, 777 (9th Cir. 2015); *Rugiero v. DOJ*, 257 F.3d 534, 551 (6th Cir. 2001); *ACLU v. DOJ*, No. 12 Civ. 7412 (WHP), slip op. at 7 (S.D.N.Y. Mar. 11, 2014); *Davin v. DOJ*, 60 F.3d 1043, 1064 (3d Cir. 1995); *ACLU of N. Cal. v. DOJ*, 880 F.3d 473, 491 (9th Cir. 2018).

[12] *See also Marino v. DEA*, 685 F.3d 1076, 1081 (D.C. Cir. 2012) ("[I]n the context of a Glomar response, the public domain exception is triggered when 'the prior disclosures establishes the existence (or not) of records responsive to the FOIA request,' regardless whether the contents of the records have been disclosed").

[13] Tim Cushing, *FCC Denies It Requires Law Enforcement to Sign a Non-Disclosure Agreement with the FBI Before Deploying Stingray Devices*, TechDirt (Oct. 10, 2014), https://www.techdirt.com/articles/20141008/13471728772/fcc-denies-it-requires-law-enforcement-to-sign-non-disclosure-agreement-with-fbi-before-deploying-stingray-devices.shtml; Curtis Waltman, *Maine State Police "Can Neither Confirm Nor Deny" Use of*

compiled over two dozen NDAs between the FBI and local and state law enforcement agencies covering those agencies' purchase and use of cell site simulator devices, with fully unredacted agreements dating back as early as June 2011.[14] These NDAs, and others, were officially disclosed by law enforcement agencies in response to public records requests, presumably with the blessing of the FBI.[15] Courts have also discussed the FBI's cell site simulator NDAs in published opinions.[16] The FBI has itself repeatedly and officially acknowledged the use of NDAs with regard to the purchase of cell site simulators, both in sworn statements, press interviews, and in previously released records.[17] And it is similarly public knowledge that the Federal Communication Commission's publicly available equipment authorizations for sale of cell site simulator technology to state and local law enforcement have included a requirement of advance coordination with the FBI.[18] The FBI



AMERICAN CIVIL LIBERTIES UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

*Cellphone Surveillance*, Muckrock (Nov. 9, 2016), https://www.muckrock.com/news/archives/2016/nov/09/msp-glomar/; ACLU & EFF, Memorandum in Support of Complaint for Relief Against Unauthorized Radio Operation and Willful Interference with Cellular Communications and Petition for an Enforcement Advisory on Use of Cell Site Simulators by State and Local Government Agencies 21 & nn. 67–68 (Sept. 1, 2016), available at https://www.aclu.org/sites/default/files/field_document/aclu-eff_fcc_cell_site_simulator_filing.pdf.

[14] Ctr. for Hum. Rts. & Priv., *Non-Disclosure Agreements Between FBI and Local Law Enforcement for StingRay*, http://www.cehrp.org/non-disclosure-agreements-between-fbi-and-local-law-enforcement/.

[15] *See, e.g.*, Unclassified NDA issued by FBI to Erie County Sheriff's Office (June 29, 2012), available at https://www.documentcloud.org/documents/1727748-non-disclosure-agreement.html; Nathan Freed Wessler & Nicole Ozer, *Documents Suggest Maker of Controversial Surveillance Tool Misled the FCC*, ACLU (Sept. 17, 2014), https://www.aclu.org/blog/documents-suggest-maker-controversial-surveillance-tool-misled-fcc.

[16] *See, e.g., State v. Andrews*, 134 A.3d 324, 348 (Md. Ct. Spec. App. 2016); *West v. City of Tacoma*, 456 P.3d 894, 900 (Wash. Ct. App. 2020); *Jones v. United States*, 168 A.3d 703, 716 n.26 (D.C. 2017); *State v. Olsen*, No. 48294-1-II, slip op. at 2 n.3 (Wash. Ct. App. Apr. 3, 2019); *United States v. Patrick*, 842 F.3d 540, 546 (7th Cir. 2016) (Wood, C.J., dissenting).

[17] FBI May 15, 2015 Email Response to *Ars Technica*, available at https://www.documentcloud.org/documents/2082240-urgent-copy-of-stingray-statement.html (acknowledging the FBI's use of non-disclosure agreements as a way to "prevent unauthorized disclosure of sensitive law enforcement information"); Affidavit of Chief of FBI Tracking Technology Unit, Bradley S. Morrison 2 (Apr. 11, 2014), available at https://www.sandiego.gov/sites/default/files/legacy/cityattorney/pdf/news/2014/nr141222c.pdf (describing and quoting at length from an NDA "specific to state and local law enforcement use of cell site simulator technology"); Ellen Nakashima, *FBI Clarifies Rules on Secretive Cellphone-Tracking Devices*, Wash. Post (May 14, 2015), https://www.washingtonpost.com/world/national-security/fbi-clarifies-rules-on-secretive-cellphone-tracking-devices/2015/05/14/655b4696-f914-11e4-a13c-193b1241d51a_story.html.

[18] *See, e.g.*, FCC, Grant of Equipment Authorization, Harris Corporation, FCC Identifier NK73166210 (Mar. 2, 2012), https://apps.fcc.gov/oetcf/eas/reports/Eas731GrantForm.cfm?mode=COPY&RequestTimeout=500&application_id=S02SFOCotzKlbdYCDPFllA%3D%3D&fcc_id=NK73166210; FCC, Grant of Equipment Authorization, Harris Corporation, FCC Identifier NK73092523 (Apr.

4

simply cannot justify its Glomar response in relation to these requested records.

      The ACLU hereby appeals from the FBI's decision, and respectfully asks that the FBI release all responsive records. Please do not hesitate to contact me if you have any questions, and thank you for your attention to this matter.

Sincerely,

Nathan Freed Wessler
Deputy Project Director
Speech, Privacy, and Technology Project
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212.549.2500
nwessler@aclu.org

**ACLU**
AMERICAN CIVIL LIBERTIES UNION

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

---

19, 2011), https://apps.fcc.gov/oetcf/eas/reports/Eas731GrantForm.cfm?mode=COPY&RequestTimeout=5 00&application_id=9nDFvP9N200RJUhSYM6ASQ%3D%3D&fcc_id=NK73092523. *See also* E-mail from [redacted] to [redacted], Re: grant condition(s) – RE: FCC response on Intended Operations (June 28, 2010, 10:56 EST), available at https://www.aclu.org/sites/default/files/assets/fcc_foia_harris_emails.pdf#page=3 (detailing an FBI request for the addition of an "advance coordinate" prerequisite so as to "address concerns over the proliferation of surreptitious law enforcement surveillance equipment").

5

# Exhibit A



National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2500
Fax: (212) 549-2564
aclu.org

Susan N. Herman
*President*

Anthony D. Romero
*Executive Director*

Richard Zacks
*Treasurer*

January 8, 2021

Federal Bureau of Investigation
David M. Hardy, Chief Record/Information Dissemination Section
Records Management Division
Department of Justice
170 Marcel Drive
Winchester, VA 22602-4843

*Via eFOIPA Portal*

Re:   **FOIA Request Concerning Conditions for State and Local Law Enforcement Purchase and Use of Cell Site Simulators
(Fee Waiver Requested)**

To Whom It May Concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for records pertaining to federal conditions on state and local law enforcement agencies' purchase and use of cell site simulator technology.

### I. Background

Cell site simulators, also known as IMSI catchers or Stingrays, are devices that impersonate wireless service providers' cell towers, prompting cell phones and other wireless devices in the area to communicate with them.[2] Cell site simulators can be used to locate, track, and identify people's phones, and can ensnare bystanders' phones even when being used to locate a particular suspect. Despite the invasiveness of this technology, for years law enforcement agencies withheld information about cell site simulators from judges, defendants, lawmakers, and the public. Much of this secrecy was attributable to a nondisclosure agreement that the FBI required state and local law enforcement agencies to sign before they could be cleared to purchase cell site simulators

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] *See generally Department of Justice Policy Guidance: Use of Cell-Site Simulator Technologsy*, Dep't of Justice, https://www.justice.gov/opa/file/767321/download.

from L3Harris Technologies (formerly known as the Harris Corporation), which was long the primary provider of cell site simulators to state and local law enforcement agencies.[3]

Recently, L3Harris Technologies announced it would no longer provide cell site simulators (or hardware and software upgrades) to state and local law enforcement agencies.[4] State and local law enforcement agencies that wish to continue using cell site simulators have consequently had to find a new source for the equipment. A number of these agencies have turned to North Carolina-based Tactical Support Equipment, Inc. ("TSE"), which is the U.S. distributor of cell site simulators manufactured by the Canadian firm Octasic, Inc.[5]

Despite the widespread purchase of Octasic cell site simulators by state and local law enforcement agencies, the public lacks information about whether the FBI imposes conditions on such sales, including whether the FBI requires state and local law enforcement agencies to sign nondisclosure agreements before purchasing the equipment from TSE.

## II. Requested Records

The ACLU seeks the release of the following records created since **January 1, 2018**:

(1) Any nondisclosure agreement provided to or entered into with any state or local law enforcement agency pertaining to that agency's purchase, use, or possession of cell site simulator technology.[6]

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

---

[3] *See, e.g.*, *Non-Disclosure Agreements Between FBI and Local Law Enforcement for StingRay*, Ctr. For Human Rights & Privacy, https://www.cehrp.org/non-disclosure-agreements-between-fbi-and-local-law-enforcement/; Nathan Freed Wessler, *Documents in ACLU Case Reveal More Detail on FBI Attempt to Cover Up Stingray Technology* (Sep. 24, 2014), https://www.aclu.org/blog/documents-aclu-case-reveal-more-detail-fbi-attempt-cover-stingray-technology/; Shawn Musgrave, *Before They Could Track Cell Phone Data, Police Had to Sign a NDA with the FBI* (Sep. 22, 2014), https://www.muckrock.com/news/archives/2014/sep/22/they-could-track-cell-phone-data-police-had-sign-n/.

[4] *See* Dell Cameron & Dhruv Mehrotra, *Cops Turn to Canadian Phone-Tracking Firm After Infamous 'Stingrays' Become 'Obsolete,'* Gizmodo (Oct. 23, 2020), https://gizmodo.com/american-cops-turns-to-canadian-phone-tracking-firm-aft-1845442778.

[5] Cameron & Mehrotra, *supra* note 4; *see also, e.g.*, Chairwoman's Policy Council Meeting: Research Notes 69, Miami-Dade Bd. Of Cty. Comm'rs, https://www.miamidade.gov/auditor/library/2020-04-20-cpc-meeting.pdf.

[6] For purposes of this request, "cell site simulator technology" refers to the type of technology at issue in the 2015 *Department of Justice Policy Guidance: Use of Cell-Site Simulator Technology*, *supra* note 2. "Cell site simulator technology" includes hardware and software secondary to or made to work in conjunction with a cell site simulator.

2

> This includes (but is not limited to) nondisclosure agreements pertaining to cell site simulator technology that:
>    (a) state or local law enforcement agencies seek to purchase from Tactical Support Equipment, Inc.;
>    (b) was produced by Octasic, Inc.; or
>    (c) is part of the "Nyxcell" line of products.

(2)  All records and communications regarding conditions that state and local law enforcement agencies must meet before those agencies purchase, use, or possess cell site simulator technology, including any requirement to advance coordinate with or obtain approval from the FBI.

### III. Application for Waiver or Limitation of Fees

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[7] The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A.  *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, media accounts underscore the substantial public interest in the records sought through this Request. See *supra* Part I. The records sought will significantly contribute to public understanding of whether the FBI continues to impose conditions on state and local law enforcement agencies' purchase and use of cell site simulator technology. Because there is no publicly available information about the FBI's current practices and polices in this regard, the requested records will "contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). .

The ACLU is not filing this Request to further its commercial interest. The ACLU is a not-for-profit organization that regularly makes information obtained under FOIA available to the public free-of-charge. Any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in

---

[7] *See also* 28 C.F.R. § 16.10(k)(2).

3

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

    B.    *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).[8] The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III)[9]; *see also Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information").

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 900,000 people. The ACLU also publishes regular updates and alerts via email to over 4.3 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 5.5 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to

---

[8] *See also* 28 C.F.R. § 16.10(k)(2).

[9] *See also* 28 C.F.R. § 16.10(b)(6).

4

documents obtained through FOIA requests, as well as other breaking news,[10] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[11]

---

[10] *See, e.g.*, Press Release, ACLU, Federal Court Permanently Blocks Billions of Dollars in Border Wall Construction (June 28, 2019), https://www.aclu.org/press-releases/federal-court-permanently-blocks-billions-dollars-border-wall-construction; Press Release, ACLU, New Documents Reveal NSA Improperly Collected Americans' Call Records Yet Again (June 26, 2019), https://www.aclu.org/press-releases/new-documents-reveal-nsa-improperly-collected-americans-call-records-yet-again; Press Release, ACLU, ACLU and Center for Media Justice Sue FBI for Records on Surveillance of Black Activists (Mar. 21, 2019), https://www.aclu.org/press-releases/aclu-and-center-media-justice-sue-fbi-records-surveillance-black-activists; Press Release, ACLU, ACLU, Privacy International Demand Government Disclose Nature and Extent of Hacking Activities (Dec. 21, 2018), https://www.aclu.org/press-releases/aclu-privacy-international-demand-government-disclose-nature-and-extent-hacking; Press Release, ACLU, New Documents Reveal Government Plans to Spy on Keystone XL Protesters (Sept. 4, 2018), https://www.aclu.org/news/new-documents-reveal-government-plans-spy-keystone-xl-protesters; Press Release, ACLU, ACLU Obtains Documents Showing Widespread Abuse of Child Immigrants in U.S. Custody (May 22, 2018), https://www.aclu.org/news/aclu-obtains-documents-showing-widespread-abuse-child-immigrants-us-custody; Press Release, ACLU, ACLU Demands CIA Records on Campaign Supporting Haspel Nomination (May 4, 2018), https://www.aclu.org/news/aclu-demands-cia-records-campaign-supporting-haspel-nomination; Press Release, ACLU, Advocates File FOIA Request For ICE Documents on Detention of Pregnant Women (May 3, 2018), https://www.aclu.org/news/advocates-file-foia-request-ice-documents-detention-pregnant-women; Press Release, ACLU, Civil Rights Organizations Demand Police Reform Documents from Justice Department (Jan. 4, 2018), https://www.aclu.org/news/civil-rights-organizations-demand-police-reform-documents-justice-department; Press Release, ACLU, ACLU Files Lawsuits Demanding Local Documents on Implementation of Muslim Ban (Apr. 12, 2017), https://www.aclu.org/news/aclu-files-lawsuits-demanding-local-documents-implementation-trump-muslim-ban; Press Release, ACLU, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, ACLU, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, ACLU, ACLU Sues for Bureau of Prisons Documents on Approval of CIA Torture Site (Apr. 14 2016), https://www.aclu.org/news/aclu-sues-bureau-prisons-documents-approval-cia-torture-site.

[11] *See, e.g.*, Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times, June 26, 2019, https://www.nytimes.com/2019/06/26/us/telecom-nsa-domestic-calling-records.html (quoting ACLU attorney Patrick Toomey); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, Hill, Mar. 21, 2019, https://thehill.com/policy/national-security/fbi/435143-fbi-sued-over-black-activist-surveillance-records (quoting ACLU attorney Nusrat Choudhury); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program (quoting ACLU attorney Hugh Handeyside); Larry Neumeister, *Judge Scolds Government over Iraq Detainee Abuse Pictures*, The Associated Press, Jan. 18, 2017, https://www.apnews.com/865c32eebf4d457499c017eb837b34dc (quoting ACLU project director Hina Shamsi); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU attorney Dror Ladin); Nicky Woolf, *US Marshals Spent*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[12] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily.[13] The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multimedia projects, including videos, podcasts, and interactive features.[14] The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases,

---

*$10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nathan Freed Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[12] See, e.g., ACLU, *Bad Trip: Debunking the TSA's 'Behavior Detection' Program* (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016), https://www.aclu.org/ blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; ACLU, *Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative* (2016), https://www.aclu.org/ report/leaving-girls-behind; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333.

[13] See *News & Commentary*, https://www.aclu.org/blog.

[14] See *Multimedia*, https://www.aclu.org/multimedia.

including analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multimedia features.[15]

The ACLU website includes many features on information obtained through the FOIA. For example, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of its contents relating to government policies on rendition, detention, and interrogation.[16] The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA.[17]

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

---

[15] *See, e.g., ACLU v. ODNI*—FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act, ACLU Case Page, https://www.aclu.org/cases/aclu-v-odni-foia-lawsuit-seeking-records-about-government-surveillance-under-usa-freedom-act; *ACLU v. DOJ*—FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-seeking-information-federal-agencies-surveillance-social-media; *ACLU v. DOJ*—FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-case-records-relating-targeted-killing-law-policy-and-casualties; Executive Order 12,333—FOIA Lawsuit, ACLU Case Page, https://www.aclu.org/cases/executive-order-12333-foia-lawsuit; ACLU Motions Requesting Public Access to FISA Court Rulings on Government Surveillance, ACLU Case Page, https://www.aclu.org/cases/aclu-motions-requesting-public-access-fisa-court-rulings-government-surveillance; *ACLU v. DOJ*—FOIA Lawsuit Demanding OLC Opinion "Common Commercial Service Agreements, ACLU Case Page, https://www.aclu.org/cases/aclu-v-doj-foia-lawsuit-demanding-olc-opinion-common-commercial-service-agreements; FOIA Request for Justice Department Policy Memos on GPS Location Tracking, ACLU Case Page, https://www.aclu.org/cases/foia-request-justice-department-policy-memos-gps-location-tracking; Florida Stingray FOIA, ACLU Case Page, https://www.aclu.org/cases/florida-stingray foia; Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida,* (Feb. 22, 2015) https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida?redirect=blog/national-security-technology-and-liberty/aclu-obtained-documents-reveal-breadth-secretive-sting.

[16] *The Torture Database*, ACLU Database, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU Database, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[17] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf; *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU (Nov. 29, 2010), https://www.aclu.org/files/pdfs/natsec/faafoia 20101129/20101129Summary.pdf; *Statistics on NSL's Produced by Department of Defense*, ACLU, https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Further, as explained above, *supra* Part III.A, the records are not sought for commercial use.

Courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media." *See, e.g., Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[18] On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[19] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

\*   \*   \*

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The

---

[18] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g., Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

[19] The ACLU regularly receives FOIA fee waivers from federal agencies. For example, in June 2018, the U.S. Citizenship and Immigration Services granted a fee-waiver request regarding a FOIA request for documents relating to the use of social media surveillance. In August 2017, CBP granted a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April 2017. In June 2017, the Department of Defense granted a fee-waiver request regarding a FOIA request for records pertaining to the authorities approved by President Trump in March 2017 which allowed U.S. involvement in Somalia. In June 2017, the Department of Defense, the CIA, and the Office of Inspector General granted fee-wavier requests regarding a FOIA request for records pertaining to U.S. involvement in the torture of detainees in prisons in Yemen, Eritrea, and aboard Yemeni or Emirati naval vessels. In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border. In April 2017, the CIA and the Department of State granted fee-waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee-waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil, Yemen. In June 2016, the Office of the Director of National Intelligence granted a fee-waiver request regarding a FOIA request related to policies and communications with social media companies' removal of "extremist" content. In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the Department of Justice for documents related to Countering Violent Extremism Programs.

8

ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Nathan Freed Wessler
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, New York 10004
T: 212.549.2500
F: 212.549.2654
nwessler@aclu.org

Please note that the ACLU's offices are currently closed due to the COVID-19 crisis, are not accepting deliveries sent via UPS, FedEx, or other parcel services, and are not forwarding parcels sent via USPS. **Please transmit any response letters and responsive records via email. If records must be mailed on a CD/DVD, please contact Nathan Wessler at nwessler@aclu.org for his home mailing address.**

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

Sincerely,

Nathan Freed Wessler
Deputy Project Director
Speech, Privacy, and Technology Project
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: 212.549.2500
nwessler@aclu.org

9

# Exhibit B



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

June 10, 2021

MR. NATHAN FREED WESSLER
AMERICAN CIVIL LIBERTIES UNION
125 BROAD STREET
EIGHTEETH FLOOR
NEW YORK, NY 10004

FOIPA Request No.: 1493352-000
Subject: Cell Site Simulator

Dear Mr. Wessler:

This letter is in response to your Freedom of Information Act (FOIA) request. Below you will find informational paragraphs about your request. Please read each one carefully.

Please be advised that it is the FBI's policy to neither confirm nor deny the existence of any records which would disclose the existence or non-existence of non-public law enforcement techniques, procedures, and/or guidelines. The acknowledgment that any such records exist or do not exist could reasonably be expected to risk circumvention of law. Thus, pursuant to FOIA exemption (b) (7) (E) [5 U.S.C.§552 (b)(7)(E)], the FBI neither confirms nor denies the existence of records as detailed in your request.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request. Please use this number in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS). The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

*M-AA.R-D*

Michael G. Seidel
Section Chief
Record/Information Dissemination Section
Information Management Division

Enclosure(s)

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request. Part 1 of the Addendum includes standard responses that apply to all requests. Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information. Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).** Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)]. FBI responses are limited to those records subject to the requirements of the FOIPA. Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records.** To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)]. The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)]. This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.** The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)]. This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.** The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Records for Incarcerated Individuals.** The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)]. This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches.** The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found. A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions. The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS. Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files. For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii) **FBI Records.** Founded in 1908, the FBI carries out a dual law enforcement and national security mission. As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Requests for Criminal History Records or Rap Sheets.** The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet. These criminal history records are not the same as material in an investigative "FBI file." An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service. For a fee, individuals can request a copy of their Identity History Summary Check. Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks. Additionally, requests can be submitted electronically at www.edo.cjis.gov. For additional information, please contact CJIS directly at (304) 625-5590.

(iv) **National Name Check Program (NNCP).** The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security. Please be advised that this is a service provided to other federal agencies. Private Citizens cannot request a name check.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.